REGAN, Judge.
Plaintiff, William E. Larsen, instituted this suit on behalf of his minor son, Pen-de'lton Larsen, aged fifteen, the operator of a motorbicycle, against defendant, Thomas E. Brenan, the owner and operator of a 1939 Mercury automobile, endeavoring to recover the sum of $12,000 for personal injuries sustained by Pendelton Larsen, as a result of a collision in the intersection of St. Claude Avenue and Alvar Street in the City of New Orleans, on June 10th, 1949, at about 7:30 a. m.
Defendant filed exceptions of no right or cause of action, vagueness and indefmiteness and further excepted to the jurisdiction of the court ratione personas.
The Board of Administrators of the Charity Hospital of Louisiana at New Orleans intervened claiming the sum of $630.-50 for professional services rendered to the plaintiff’s son in consequence of this accident.
The judge, a quo, maintained the exception of vagueness and permitted plaintiff to amend. Defendant then answered and, in effect, admitted his own negligence but pleaded the contributory negligence of Pen-delton Larsen.
The trial court rendered judgment in favor of the defendant dismissing plaintiff’s suit predicated upon the finding that young Larsen was guilty of contributory negligence, in that he failed to decrease his speed and look to his left before entering and proceeding into St. Claude Avenue from Alvar Street. Plaintiff has appealed.
The record reveals that on June 10th, 1949, at approximately 7:30 a. m., plaintiff’s minor son, Pendelton Larsen, was riding a motorbicycle in Alvar Street in the direction of the river, when he was struck and seriously injured by defendant’s automobile, which was being driven in St. Claude Avenue in the direction of Canal Street.
A building existed on the corner to Larsen’s left which obstructed his vision in St. Claude and which placed that corner in the category of what is colloquially designated as a “blind corner.” At the moment of the accident there was also a New Orleans Public Service omnibus temporarily stopped on the corner, which additionally obstructed Larsen’s vision to his left.
The traffic semaphore signal light was in Larsen’s favor and, at least one automobile had preceded him into St. Claude Avenue from .Alvar Street before he entered the intersection and endeavored to traverse St. Claude Avenue at a speed of between fifteen and twenty miles per hour.
Larsen had reached the left traffic lane of St. Claude Avenue when his bicycle was struck by defendant’s automobile, which had proceeded into the intersection against an unfavorable or red semaphore signal light at a speed of about thirty-six miles per hour, although defendant disputes this estimate of his speed and contends that he was driving about twenty or twenty-five miles per hour.
John A. Lopez, brake inspector for the New Orleans Police Department, who, defendant’s attorney admitted was an “expert”, testified that he arrived at the scene of the accident twenty minutes after its occurrence and based upon the “skid marks” impressed in the roadway by defendant’s car, he calculated its speed at thirty-six miles per hour. St. Claude Avenue at Alvar Street is a thirty mile speed zone.
Apparently neither operator saw the other until shortly before the moment of impact due to the blind corner and the parked bus which, as observed heretofore, obstructed the vision of both plaintiff’s son and the defendant.
Defendant maintains that (a) plaintiff was “negligent by the very act of permitting his minor son, over the age of fourteen, to drive a powercycle without a license”; (b) that Larsen was “guilty of negligence per se * * * ¡n passing a vehicle on the left on a two-way street and entering an intersection with a thoroughfare frequented by heavy traffic, as is St. Claude *339 Avenue”; (c) “a motorist cannot dash recklessly into obvious danger relying on the right of way, without exercising at least some slight degree of care”; (d) “where there exists exceptional circumstances, there is further reason for the driver approaching the intersection favored with a green light to exercise some degree of caution”; and (e) “where between the time in which a traffic signal light becomes favorable to a motorist, whose view is blocked by a street car or a bus, and the time at which he enters the intersection, sufficient time has not elapsed for complete clearing of the intersection, he is not justified in assuming there is no other vehicle in the intersection.”
Plaintiff, in opposition thereto, contends that “in view of the fact that young Larsen’s vision was totally blocked by the building and the bus to his left, even had he looked in that direction, he still would not have seen the approach of defendant’s car, and could have taken no action to have avoided the collision. A person is charged only with seeing what he could or should have seen. It was impossible for Larsen to have seen the defendant’s approaching automobile and hence, whether or not he looked to his left is immaterial in determining whether or not he was at fault.”
The record unequivocally substan-. tiates the conclusion that the defendant was guilty of negligence in entering the intersection on an unfavorable or red light, therefore, the only question posed for our consideration by virtue of the foregoing facts, is whether young Larsen was guilty of contributory negligence in failing to look to his left and slacken his speed before entering the intersection of St. Claude Avenue and Alvar Street.
Briefly reviewing the actions and conduct of young Larsen at the time of this accident, the record reflects that he was operating his motorbicycle in Alvar Street at a speed of from fifteen to twenty miles per hour and entered the intersection at a time when the semaphore traffic signal light had, for at least several seconds, reflected a green or favorable light, and this is substantiated by the evidence in the record to the effect that at least one automobile had already preceded him into the intersection and was in the process of making a right turn in the direction of Canal Street at the moment that the accident occurred. While it is true that Larsen’s view from Alvar Street into St. Claude Avenue, which was to his left, was obstructed by both a building and a parked omnibus, still the intersection was and had been for several seconds clear of any traffic. If the defendant, who was operating his automobile in St. Claude Avenue in the direction of Canal Street, had obeyed the unfavorable semaphore signal the accident would not have occurred.
It is not incumbent upon a motorist, in the position in which Larsen found him- . self, to stop his vehicle and to peer cautiously around an obstruction to ascertain whether or not motorists proceeding in St. Claude Avenue would obey unfavorable traffic signals. This view has consistently been substantiated by this Court and the Supreme Court.
In the case of Lewis v. Groetsch, La.App., 32 So.2d 396, 399, which in our opinion, is apposite and controlling, the plaintiff’s vehicle was struck by the defendants’ truck as plaintiff attempted to cross the intersection of Louisiana and St. Charles Avenues. There was a semaphore signal light in plaintiff’s favor, but his view into Louisiana Avenue was obstructed by a stationary trolley car. Defendants pleaded the contributory negligence of plaintiff in that the plaintiff failed to keep a proper lookout and blindly entered the intersection while his vision was thus obscured. In rendering judgment for plaintiff this court took full cognizance of the rulé prohibiting a motorist from entering an intersection blindly, even though the semaphore signal light was in his favor, but qualified that rule with the following language: “Still, in view of the positive testimony found in • the record, we must conclude * * * that when Lewis (plaintiff) entered the intersection the light facing him had been green for a reasonable time. If so, then the truck must have entered after the light facing it had turned to red, and it follows that there had elapsed a sufficient time for the clearance of the crossing by any vehicle which may have entered it on *340 a favorable light. It follows also that since plaintiff’s view was obstructed, he was not at fault in failing to see that the truck was about to dash across in front of him. In entering the intersection at a reasonable speed several seconds after the light had become favorable, plaintiff did all that the dictates of prudence required of him.”
In arriving at this conclusion, we used the following language: “We think that if between the time in which the light became favorable to plaintiff and the time at which he entered the intersection there had elapsed sufficient time for the complete clearing of the crossing by any vehicle which may have been caught in the intersection by the changing light, then Lewis, was justified in assuming that there was no other car in the intersection because there was no reason for him to anticipate that some other driver would enter the intersection after the light had changed to red. Had the streetcar not blocked plaintiff’s vision to his left, it is possible that we would feel that he should have noticed the truck even though it may have entered in the face of an unfavorable light, but since his view was blocked his failure to see the oncoming truck was not negligence on his part.”
In our opinion the evidence contained in the record overwhelmingly preponderates in favor of the plaintiff to the effect that Larsen entered the intersection at a reasonable speed on a favorable light and that the proximate cause of the accident was defendant’s negligent entrance into the intersection in violation of an unfavorable semaphore signal.
In Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 294, the Supreme Court said: “It can not and will not be disputed that a motorist, who recklessly and without exercising some degree of caution enters an intersection on a favorable light, is not free from negligence if he collides with another motorist who enters an intersection on an unfavorable light. And it can not and will not be disputed that a motorist can not, in the face of imminent danger, rely upon the right of way accorded him by law. But it also can not be disputed that under the traffic light system a motorist, who is proceeding on a proper signal, should not be held to the same degree of care and vigilance as if no such system prevailed. He has the right to assume that the signals are understood and will be observed and he is not required to anticipate that pedestrians or other motorists will, in violation of law, enter a crossing on a wrong signal. The danger at such crossing is less than if there were no such signals and therefore less care is exacted.”
The only remaining query posed for our consideration is the monetary evaluation of the personal injuries sustained by Pendel-ton Larsen.
The only medical evidence contained in the record relating to the injuries suffered by young Larsen are photostatic copies of Larsen’s medical record while a patient in the Charity Hospital in the City of New Orleans, which also covers his treatment as an out-patient.
Larsen suffered a “fracture of the middle Ys left humerus and fracture of his left acetabulum and pubic rami.” Immediately following and as a result of the accident, Larsen’s injuries necessitated confinement in the Charity Hospital for a period of three months, during which time, his left arm and left leg were suspended in traction. Upon being discharged from the hospital he was confined to a wheel chair for approximately one month and then, in order to enable him to walk, it was necessary that he use crutches for a period of about one month and a half.
Larsen testified that as a result of the accident his left leg is one-half inch shorter than his right and that whenever the weather is damp or cold he can hardly lift his leg to walk and that he limps all the time; that he can not use his arm to lift any weight and that although he had two menial positions since the occurrence of the accident he was forced to abandon them because of his inability to stand on his feet very long. He further testified that as a result of the accident his schooling was interrupted for approximately one year.
The foregoing injuries which were sustained by Larsen stand uncontradicted in *341 the record. Defendant offered no medical testimony in refutation thereof. In our opinion an award of $5,000 is adequate in view of the obvious inability, as reflected by the record, of defendant to respond in damages.
We do not find in the record any evidence of an appeal by the Charity Hospital, therefore, there can be no recovery on its part. Blanke v. Miranne, La.App., 11 So.2d 264; Tillman v. Public Belt R. R. Commission, La.App., 42 So.2d 888.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of William E. Larsen, on behalf of his minor son, Pen-delton Larsen, and against the defendant, Thomas E. Brenan, in the sum of $5,000 with legal interest thereon from judicial demand until paid.
Reversed.